UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 05-10142-JLT |
| v. ) | |
| ) | |
| ALVIN CAMPBELL ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALVIN CAMPBELL'S
MOTION TO SUPPRESS EVIDENCE**

I.   **BACKGROUND FACTS**

Alvin Campbell was stopped by a marked MBTA cruiser at approximately 12:05 a.m. on March 19, 2005 for exceeding the speed limit.[1] Officer Ryan, who conducted the traffic stop, requested State Police assistance after initially speaking with Mr. Campbell and requesting his license and registration. Two Massachusetts State Troopers – Trooper Ferrari and Trooper McGowan – arrived on the scene shortly after Mr. Campbell had been pulled over. Both Mr. Campbell and his passenger, William C. Cook, were told to exit the vehicle and were then handcuffed and pat frisked. At that time, the vehicle was searched and two plastic bags containing a green leafy substance were found, as well as a loaded 9 mm magazine. The loaded 9 mm magazine was found on the passenger side floor board, where Mr. Cook had been seated.[2] Upon discovery of the green leafy substance and the loaded 9 mm magazine, Mr. Campbell and Mr. Cook were placed

---

[1] Defendant Campbell concedes, for the purposes of this motion, that he was lawfully pulled over for driving in excess of the posted speed limit.

[2] Mr. Campbell does not challenge this initial search of the vehicle, as he concedes the officers were lawfully conducting a protective sweep.

under arrest for possession of a class D substance (marijuana) and each man was placed in a separate marked police cruiser.

After placing both Mr. Campbell and Mr. Cook – both of whom were in handcuffs – in the back of police cruisers, officers continued searching the vehicle. At that time, Officer Ryan opened the locked glove compartment[3] and found two more bags of a green leafy substance and a loaded 9 mm Smith and Wesson semi-automatic handgun. An MBTA Transit Officer – Officer O'Loughlin – then arrived on scene and took custody of Mr. Campbell. After Mr. Campbell had been placed in the back of the cruiser, Sergeant McCarthy of the State Police K-9 unit arrived and conducted a more in depth search of the vehicle with a police dog. No additional contraband was found. Trooper Staco and Sgt. Rosario from the MBTA Transit Police also arrived on the scene to "assist with the investigation" and the bagging of the evidence. During the search following his arrest, Trooper McGowan found $2202.00 in United States currency in Mr. Campbell's possession. Finally, during an inventory search of the vehicle – conducted after it had been towed to MBTA Transit Police Headquarters – one marijuana cigarette was found inside Mr. Campbell's jacket pocket. The jacket was found in the trunk of the car. Alvin Campbell was charged with possession of a firearm after being arrested on March 19, 2005.

---

[3] Contrary to the information contained in the police report, the vehicle registration had not been located in the locked glove compartment; rather, it was located in an unlocked center console. See Campbell Affidavit, ¶ 4.

**II.     ONCE MR. CAMPBELL AND HIS PASSENGER HAD BEEN PLACED IN HANDCUFFS, ARRESTED, AND BEEN SEATED IN THE BACK OF POLICE CRUISERS, IT WAS UNLAWFUL FOR POLICE TO OPEN THE VEHICLE'S LOCKED GLOVE COMPARTMENT**

It is well-settled that incident to a lawful custodial arrest, the police are justified in conducting a contemporaneous search of the person arrested and the immediately surrounding area without first obtaining a warrant. See Chimel v. California, 395 U.S. 752, 763 (1969). A search incident to arrest is valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape," as well as the need to prevent destruction or concealment of evidence. Id. It is equally well-settled that when a policeman makes a lawful custodial arrest of the occupant of an automobile, he may search the passenger compartment of that automobile contemporaneously with the arrest. See New York v. Belton, 453 U.S. 454, 460 (1981). The Court in Belton explained that the police may also examine the contents of any containers found within the passenger compartment; this conclusion was reached on the theory that if the passenger compartment is within the reach of a person recently arrested, any containers within the passenger compartment will also be within his reach. See id. Further, containers – a term which includes glove compartments – may be searched whether they are open or closed. See id. at 461.

It is true that the First Circuit has upheld Belton's bright-line rule even in cases where the arrestee was under physical restraint and at some distance from the automobile at the time of the search. See United States v. Jackson, 918 F.2d 236, 240 (1st Cir. 1990). In the present case, however, it is clear that once Mr. Campbell (and his passenger, Mr. Cook) were handcuffed and placed in the back of police cruisers, there was no longer a danger that either man would be able to remove any weapons from the vehicle in order to resist arrest or effect an escape. On the contrary,

both men cooperated with the police. Further, by the conclusion of the traffic stop, arrest, and search, there were seven (7) law enforcement officers on the scene[4]. Given the ratio of officers to recent arrestees, and the fact that both men were cuffed and in the back of police cruisers, the security rationale for the Belton rule no longer applied.

It is also significant that the vehicle in which Mr. Campbell was arrested did not belong to him; therefore, he was not aware of the contents of the glove compartment. Further, the loaded 9 mm magazine was found on the passenger side of the vehicle, where Mr. Cook had been sitting. Finally, during the initial stop, Mr. Campbell produced the vehicle's registration from the unlocked center console, not the locked glove compartment. Under these circumstances, it was unlawful to open the locked glove compartment and search its contents after Mr. Campbell had been handcuffed and placed in the back of the police cruiser.

### III. THE WEAPON FOUND DURING THE SEARCH OF DEFENDANT'S AUTOMOBILE SHOULD BE EXCLUDED AS EVIDENCE AT TRIAL

The exclusionary rule was adopted "to effectuate the Fourth Amendment right of all citizens 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . .'" United States v. Calandra, 414 U.S. 338, 347 (1974) (quoting Weeks v. United States, 232 U.S. 383 (1914); Mapp v. Ohio, 367 U.S. 643 (1961)). Evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of an illegal search and seizure. See id.; see also Wong Sun v. United States, 371 U.S. at 484 (stating that evidence seized

---

[4] The facts set forth in the Court's opinion in United States v. Jackson do not make clear how many officers were involved in the arrest and search of defendant.

during an unlawful search cannot constitute proof against the victim of the search). For all of the reasons set forth above, defendant asserts that the search and seizure that occurred on March 19, 2005 when he was pulled over for a traffic violation was illegal. Therefore, the weapon seized from the glove compartment should be excluded as evidence at trial.

## IV.    CONCLUSION

For all of the foregoing reasons, the firearm found during the search of the vehicle should be excluded from evidence at trial.

                                        Respectfully submitted,
                                        **ALVIN CAMPELL,**
                                        By his attorney,

/s George F. Gormley

George F. Gormley (BBO # 204140)
*George F. Gormley, P.C.*
655 Summer Street
Boston, MA 02210
(617) 478-2750

**Dated:**    December 16, 2005