UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>ALVIN CAMPBELL  ) | CRIMINAL NO. 05-10142-JLT |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The government hereby respectfully submits it opposition to Defendant Alvin Campbell's Motion to Suppress Evidence (the "Motion"). By the Motion, the defendant seeks to suppress any evidence found as a result of a search performed on March 19, 2005, although his memorandum reveals that it actually is simply the suppression of a firearm that he seeks. Def. Memo at 5. For the reasons set forth below, the Motion should be denied.

**FACTUAL BACKGROUND**

The facts set forth below are based on the report of MBTA Police Officer Joseph Ryan, which is attached hereto.[1]

At about 12:05 a.m. on March 19, 2005, MBTA Police Officer Ryan was driving southbound on I-95 in Sharon when a car sped past him in the right-hand lane. After clocking the car at 82 MPH, Officer Ryan activated his lights and pulled the car over. He approached the vehicle and, using his flashlight, saw in the back seat area an open plastic bag containing a green leafy

---

[1] The government reserves the right to adduce additional facts at any evidentiary hearing on the Motion.

1

substance that appeared to the officer to be marijuana sitting inside an open paper bag.

There were two people sitting up front, and the officer asked the driver -- soon identified as Alvin Campbell (the "defendant") -- for his license and registration.  The passenger, William Cook, reached into the glove box and retrieved the items for the defendant.  Officer Ryan then asked the defendant what was in the bag in the back seat.  The defendant asked whether the officer was referring to a different bag sitting on the console, and Officer Ryan directed the defendant to the bag sitting in the back.  The defendant indicated there were just a couple of beverages in the bag, and reached for the paper bag.  As the defendant brought it toward himself, the plastic bag fell out near the console, and the defendant covered the plastic bag with his arm.  The defendant then showed the officer that the paper bag contained two cans of beer.  The defendant then leaned toward the console in what the officer perceived as a further effort to conceal the plastic bag.  The officer smelled marijuana.  Officer Ryan asked the defendant what had fallen out of the bag, and the defendant, appearing nervous, insisted that nothing had fallen out.

Officer Ryan decided to wait for backup before getting the defendant and Cook out of the car, so he told them he needed to run registry information and went back to the cruiser to call for

assistance. Two state troopers thereafter arrived, and the defendant and Cook were told to get out of the car, at which point they were handcuffed and pat-frisked.

Officer Ryan began to search the passenger area of the car and found not only the plastic bag that had fallen out of the paper bag and that contained marijuana, but also another plastic bag still inside the paper bag that also contained marijuana. Meanwhile, one of the troopers found on the floor in front of the front passenger seat a loaded 9mm magazine.

The defendant and Cook were placed under arrest for possession of a class D substance. While continuing to search the passenger area of the car, Officer Ryan discovered that the glove box, which had been unlocked when Cook retrieved the documents from it, was now locked. He opened it and discovered two more bags of marijuana and a loaded 9mm Smith & Wesson pistol.

Officers also recovered $2,202 in cash from Campbell's person. The total weight of the marijuana was 171.03 grams, or about 0.38 pounds.

**ARGUMENT**

I.   **THE INITIAL SWEEP OF THE CAR WAS LAWFUL**

The defendant, appropriately, concedes that the initial sweep of the car, whereby the police recovered the marijuana and a 9mm magazine loaded with ammunition, was lawful. See Motion at

1 n. 2 ("Mr. Campbell dos not challenge this initial search of the vehicle, as he concedes the officers were lawfully conducting a protective sweep."); Def. Memo at 1 n.2.  In <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the Supreme Court held that the police may stop individuals based on reasonable suspicion, and may conduct a pat frisk for weapons where the officer reasonably concludes that "the persons with whom he is dealing may be armed and presently dangerous . . . ."  The Supreme Court has long since extended the concept of the pat frisk/protective sweep to the compartment areas of vehicles, and the areas within the compartment area, in which weapons might be concealed.  <u>Michigan v. Long</u>, 463 U.S. 1032, 1049-50 (1983).  In light of this law, the defendant's concession of the lawfulness of the protective sweep, resulting in the recovery of the marijuana and 9mm magazine, is appropriate.[2]

**II.   THE FIREARM WAS RECOVERED INCIDENT TO THE DEFENDANT'S ARREST**

The defendant complains, however, of the next stage of the proceedings.  Specifically, he maintains that he and Cook were

---

[2] So, too, is the defendant's concession that the initial stop of the vehicle was proper.  <u>See</u> Motion at 1 n.1 ("Defendant Campbell concedes, for the purposes of this motion, that he was lawfully pulled over for driving in excess of the posted speed limit.").  The police, of course, may lawfully stop a vehicle that is engaged in moving violations such as speeding, <u>see</u> <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996), <u>United States v. Dhinsa</u>, 171 F.3d 721, 725-26 (2d Cir. 1999), and, in the context of such a stop, may order occupants of the vehicle to get out.  <u>See</u> <u>Pennsylvania v. Mimms</u>, 434 U.S. 106 (1977); <u>Maryland v. Wilson</u>, 519 U.S. 408 (1997).

arrested, handcuffed, and in the back of police cruisers when the police found further drugs and the Smith and Wesson firearm in the glove compartment.  Def. Memo at 2.  He claims that there was no longer a danger that either of them would be able to get to weapons in the car and that the security rationale underlying the Supreme Court's decision in New York v. Belton, 453 U.S. 454, 460 (1981), no longer applied.

   Contrary to the defendant's position, however, it is well settled that the police may search the passenger compartment of a vehicle incident to the arrest of a recent occupant of that car. Indeed, the Supreme Court recently made clear that the police may search the passenger compartment incident to arrest, even if the defendant is first encountered after he has left the car and even if, at the time of the search, he is hand-cuffed and secured in a police cruiser.  Thornton v. United States, 541 U.S. 615 (2004). The First Circuit reached a like conclusion in United States v. Doward, 41 F.3d 789 (1st Cir. 1994), a case in which the First Circuit upheld a search incident to arrest of a car, even though the defendant was under arrest, handcuffed, and sitting in a police cruiser when the search started, and even though the handgun in question was not discovered until the defendant had been transported from the scene.  The court in Doward relied in this respect on the Supreme Court's Belton decision, noting that "Belton upheld a warrantless search of the entire 'passenger

5

compartment' against a claim that all its occupants were outside the vehicle at the time of the search -- thus, as a practical matter, no longer within 'reach' of any weapons, evidence or contraband located within the passenger compartment." Doward, 41 F.3d at 792 (emphasis in original). Thus, the defendant's contention here that the police could not search the car incident to the arrest of himself and Cook because they were sitting in the back of police cruisers is not correct.

Nor is it correct that the police could not search the glove compartment as part of the search incident to arrest. In Belton, the Supreme Court held that the police may search, incident to the arrest of the occupant of a car, not just the passenger compartment but also any containers in the compartment. The First Circuit has recognized that this extends to glove compartments. See United States v. Reyes-Mercado, 22 F.3d 363, 366 n. 10 (1st Cir. 1994)(observing that Belton held that "after policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, 'examine the contents of any containers,' including glove compartments, found within the passenger compartment").

In sum, the police lawfully searched the car, including the glove compartment, incident to arrest, and thus the Motion, seeking suppression of the Smith and Wesson firearm, must be denied.

**III. THE SEARCH ALSO MEETS THE AUTOMOBILE EXCEPTION**

Even if the search was not lawful as incident to arrest, it would still comply with the Fourth Amendment under the automobile exception.  Under this exception to the warrant requirement, a warrantless search of an automobile will be upheld if "officers have probable cause to believe that the vehicle contains contraband."  United states v. Ross, 456 U.S. 798, 808 (1982).  As the First Circuit recently recognized, the government must simply show that "law enforcement officers had 'a belief, reasonably arising out of circumstances known to the seizing officer,' that the vehicle 'contain[ed] that which by law is subject to seizure . . . ."  United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004), citing Carroll v. United States, 267 U.S. 132, 149 (1925).

Here, Officer Ryan plainly had probable cause to search the entire car, including the glove compartment, at the time he opened the glove compartment and discovered the firearm and additional drugs.  As noted above, the defendant concedes that the protective Terry sweep of the car was lawful.  Pursuant to that sweep, the officers discovered the loaded 9mm magazine on the floor in front of the passenger seat.  Since a loaded magazine is of little utility without a firearm, the officers had probable cause to believe that a continued search of the car would reveal such a firearm.  Thus, the firearm discovered in the

glove compartment is admissible under this theory, as well.

**IV.   THE INEVITABLE DISCOVERY DOCTRINE APPLIES**

Finally, the firearm would inevitably have been discovered as part of the inventory of the vehicle in any event.  As the above recitation of facts reveals, the defendant was stopped on a busy highway.  Accordingly, as the police report attached hereto indicates, Boston Towing was called and the car was towed from the side of I-95.  The report further reveals that an inventory search was thereafter performed, resulting in the discovery and seizure of a marijuana cigarette found in the pocket of a jacket that was located in the trunk.  Had the officers not discovered and recovered the firearm from the glove compartment at the scene of the arrest, they clearly would have discovered the gun when they inventoried the car after it was towed.  Thus, the inevitable discovery doctrine applies and this Court should hold that the firearm is admissible, even if the Court concludes that neither the automobile exception nor a search incident to arrest justifies the search.  See United States v. Scott, 270 F.3d 30, 42 (1st Cir. 2001)(evidence would inevitably have been discovered during inventory search of vehicle); United States v. Silvestri, 787 F.2d 736, 744 (1st Cir. 1986).

## **CONCLUSION**

For the foregoing reasons, the Motion should be denied.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

By:
                                /s/Robrt E. Richardson
                                ROBERT E. RICHARDSON
                                Assistant U.S. Attorney

# ATTACHMENT A

# MBTA Police Affidavit

| Arrestee Information | | Journal No. | | Booking No. | |
|---|---|---|---|---|---|
| | | Date: | 03-19-2005 | Time: | 5:25am |
| Name: | CAMPBELL  Alvin  R. | | | D.O.B: | 08-02-1980 |
| Street Address: | 96 West Springfield Street | | | Apt. #: | 1 |
| City: | Boston | State: | MA | Zip: | 02118 |
| Social Security: | 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 | Height: | 6'4" | Weight: | 280lbs. |
| Charges: | | Chapter/Section: | | Court Code | |
| 1. Unlawful Possession of a Firearm | | 269-10(d) | | 55 | |
| 2. Unlawful Possession of Ammunition | | 269-10(h) | | 55 | |
| 3. Possession w/intent to Distribute Class D, Drugs | | 94c-32c | | 55 | |
| 4. Speeding | | 90-18 | | 55 | |
| 5. | | | | | |

*Narrative:*
On Saturday March 19, 2005 at approximately 12:05am Officer Ryan, while driving south on Route 95 in Sharon in a marked MBTA Police cruiser, observed a motor vehicle in his rear view mirror approaching his cruiser at a high rate of speed. The vehicle passed Officer Ryan's cruiser in the right lane and continued south on Route 95 at a high rate of speed. At the time of the incident, Officer Ryan was traveling in the far left lane and operating at approximately sixty-five miles per hour. Officer Ryan accelerated to a speed of eighty-five miles per hour in an effort to catch up to the vehicle, which was identified as a black Lexus bearing Massachusetts Registration 9797YL. Once behind the vehicle, Officer Ryan was able to clock the vehicle for approximately a half-mile at a speed of eighty-two miles per hour. At this time Officer Ryan activated the cruisers emergency lights and sirens to initiate a motor vehicle stop. The vehicle continued south for approximately one half mile and than pulled to the side of the road. Officer Ryan exited his cruiser and approached the vehicle on the driver's side. Officer Ryan observed two occupants in the vehicle, both were located in the front of the vehicle.

Upon approaching the vehicle, Officer Ryan shined his flashlight into the back seat of the vehicle and observed, in plain view, a plastic bag, which appeared to contain a green leafy substance. The plastic bag was protruding from the top of another brown paper bag, which was located on the rear seat of the vehicle. Officer Ryan believed, from his training and experience, that the bag contained marijuana. Officer Ryan asked the operator, identified as Alvin R. Campbell, for his license and registration. After a brief search for the registration in the glove box by the passenger, later identified as William C. Cook, Mr. Campbell handed Officer Ryan his license and registration. Officer Ryan then asked Mr. Campbell what was in the bag in the back seat. At first Mr. Campbell hesitated and then stated, "What bag, this

Arresting Officer's
Signature: _____  Date __/__/__  Supervisor's ID ___
Page 1 of ___

AC 001


one" and he motioned towards an empty bag on the front console of the vehicle. Officer Ryan informed Mr. Campbell that he was talking about the brown paper bag in the back seat and not the empty bag in the front of the vehicle. Mr. Campbell then reached into the back of the vehicle and grabbed the brown bag and stated, "Oh, there's just a couple of unopened beverages in the bag. We're not that stupid, officer." Mr. Campbell brought the bag into the front seat with him and while doing so Officer Ryan noticed the plastic bag with the green leafy substance fall out of the brown paper bag and land near the center console. Mr. Campbell immediately covered up the plastic bag with his right arm and then showed Officer Ryan the unopened beer from the brown paper bag which was now located on Mr. Campbell's lap. Officer Ryan noticed that Mr. Campbell was gradually leaning over to the right, in what the officer believed, was an attempt to further conceal the plastic bag.

At this time Officer Ryan started to smell, what he believed to be strong odor of marijuana emanating from inside the vehicle. Officer Ryan then asked Mr. Campbell what had fallen out of the brown paper bag. Mr. Campbell stated, "What? Nothing fell out of the bag." Mr. Campbell then made a slight movement with his right arm and Officer Ryan was able to see the plastic bag underneath Mr. Campbell's right arm. Officer Ryan noticed that Mr. Campbell appeared nervous and again stated that nothing had fallen out of the bag. Officer Ryan asked Mr. Campbell what was underneath his arm and again Mr. Campbell stated, "there's nothing there!" Mr. Campbell then turned to Mr. Cook and made a comment that Officer Ryan was unable to hear. After the comment Officer Ryan noticed Mr. Cook started to reposition himself in his seat. At this time Officer Ryan believed he had enough probable cause to have the driver exit the vehicle but determined that it was not safe to do so alone and that it would be better to wait for additional units to arrive on scene. Officer Ryan told Mr. Campbell and Mr. Cook to remain in the vehicle while he conducted a Registry of Motor Vehicles query through dispatch. Officer Ryan walked back his cruiser and attempted to contact dispatch by use of the cruiser's radio but failed due to poor radio reception. Officer Ryan then called Officer Smith, the dispatch officer, via his Nextel direct connect phone. Officer Smith immediately notified the Massachusetts State Police of the situation and the information was relayed to their units in the area.

Two Massachusetts State Troopers arrived on scene shortly thereafter to provide assistance with the stop. Officer Ryan informed both Trooper McGowan and Trooper Ferrari of the situation. Trooper McGowan, Trooper Ferrari and Officer Ryan had Mr. Campbell and Mr. Cook exit the vehicle. Both individuals were then handcuffed and pat frisked for officer safety purposes while the vehicle was searched. During the search of the vehicle Officer Ryan located one plastic bag containing a green leafy substance on the front, passenger side floor. Officer Ryan confiscated the bag and notified both troopers of the discovery. Officer Ryan then discovered another plastic bag, which also contained the same green leafy substance, inside the brown paper bag that the first plastic bag had originated from. At this time, Trooper Ferrari informed Officer Ryan that he had just found a loaded 9mm magazine in the vehicle on the passenger floor board. Trooper Ferrari then warned the other officers that there could possibly be a gun in the vehicle. At that moment Mr. Cook fell or jumped over the guardrail and rolled slightly down the embankment toward the tree line. Prior to that Mr. Cook had been handcuffed and seated on the guardrail. Trooper Ferrari helped Mr. Cook to his feet and then conducted a search of the immediate area to ensure Mr. Cook had not tossed any contraband or a weapon into the woods. The search results were negative. At this time Mr. Campbell and Mr. Cook were placed under arrest for possession of a class D

---

Arresting Officer's
Signature: _____   Date ___/___/___   Supervisor's ID ___

Page 2 of ___

AC 002

# MBTA Police Affidavit - Con't.

substance-marijuana and placed into the back of two marked police cruisers. Officer Ryan then continued to search the rest of the vehicle. During the search Officer Ryan noted that the glove compartment was locked, which he found unusual since Mr. Cook had just retrieved the registration from it a short time ago. Officer Ryan, believing that there could be more drugs or possibly even a weapon in the glove compartment, opened the box and did discover two more large bags of a green leafy substance and a loaded 9mm Smith and Wesson semi-automatic handgun. Officer Ryan informed both troopers of the marijuana and handgun discovery. Trooper McGowan called State Police dispatch and requested a K-9 unit to respond to the area to search the vehicle more thoroughly for drugs.

At this time Officer O'Loughlin from the MBTA Transit Police Department arrived on scene and took custody of Mr. Campbell. Officer O'Loughlin placed Mr. Campbell into the back of her marked police cruiser.

Sgt. McCarthy from the State Police K-9 unit arrived on scene and conducted a more in depth search of the vehicle with his dog. The search resulted in negative findings.

Trooper Staco also arrived on scene and provided assistance with the investigation.

Sgt. Rosario from the MBTA Transit Police also arrived on scene and assisted with the bagging of the evidence.

During the search incident to arrest by Trooper McGowan it was discovered that Mr. Campbell was also in possession of $2202.00 in U.S. currency. Both Mr. Cook and Mr. Campbell were transported to MBTA Transit Police Headquarters by two marked cruisers and booked in the usual manner for unlawful possession of a firearm, unlawful possession of ammunition, and possession with intent to distribute class D substance, marijuana.

Mr. Campbell was also issued a criminal Massachusetts Uniform citation M1540759 for speeding, 90-18 and possession with intent to distribute a class D substance -marijuana, 94c-32c.

Boston Towing arrived on scene and the vehicle was towed to MBTA Transit Police Headquarters for safe keeping. During an inventory search of the vehicle per department policy, Officer Ryan confiscated one marijuana cigarette that was found inside Mr. Campbell's jacket pocket inside a plastic bag. The jacket was described as a brown jacket with a reddish inside liner and a fury hooded collar. The jacket was found in the trunk of the vehicle and several pictures were taken of the trunk and its contents. One cell phone was also confiscated from the vehicle, a blue Samsung phone, and also logged into evidence along with the brown paper bag mentioned in the affidavit.

The marijuana was weighed at MBTA Transit Police Headquarters with a total weight of 171.03grams. The marijuana was logged into evidence and labeled 74 of 4100 and 75 of 4100. The 9mm Smith and Wesson semi-automatic handgun, model number SW9VE with serial number PBU4126, was also logged into evidence and placed into evidence locker 106. The $2202.00 in U.S. Currency that was seized from Mr. Campbell was also logged in as evidence and turned in the prosecutor's office.

Arresting Officer's
Signature: _____ Date __/__/__ Supervisor's ID _____

Page 3 of __