## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 05-10142-JLT |
| v. | ) | |
| | ) | |
| ALVIN CAMPBELL | ) | |
| | ) | |

## DEFENDANT ALVIN CAMPBELL'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE

**I.    BACKGROUND FACTS[1]**

During the early morning hours of March 19, 2005, MBTA Transit Police Officer Joseph Ryan pulled Alvin Campbell over for exceeding the speed limit.  Officer Ryan testified that he was working a "detail[2]" on March 18, 2005 from 1y1:30 p.m. until 4:30 a.m. (March 19, 2005); en route to performing the duties of this detail, Officer Ryan was traveling southbound on Interstate 95 in Sharon, Massachusetts at 12:05 a.m.  According to Officer Ryan, he saw a motor vehicle (a black Lexus with Massachusetts Registration 9797 YL) in his rearview mirror that was traveling at a high rate of speed in the right lane.  Having "clocked" the vehicle at approximately 82 miles per hour, Officer Ryan initiated a motor vehicle stop by activating his lights and sirens.

---

[1] Defendant Campbell relies on the "Background Facts" section of his original Memorandum of Law in Support of his Motion to Suppress Evidence for any relevant facts already discussed.  Additional facts are set forth above based on testimony given at the suppression hearing of June 28, 2006.

[2] Officer Ryan was unable to explain for whom he was working what he referred to as a "detail" that evening.  He insisted that he was performing his normal job duties by patrolling the south commuter rail parking lots, while at the same time stating that it was a "private detail."

Officer Ryan acknowledged on cross examination that speeding is a civil, not criminal, infraction[3].

Officer Ryan testified that upon approaching the driver's side of the automobile, he shined his flashlight into the vehicle and saw two occupants in the front seat; in the back seat, he observed a brown bag with a green, leafy substance in it. Upon detecting a "strong odor of marijuana" and observing that defendant appeared "extremely nervous," Officer Ryan concluded that he had probable cause to make an arrest. Given the location, time of night, and size of the occupants of the vehicle, Officer Ryan decided it was unsafe to arrest the passengers on his own; therefore, he used his Nextel radio to call for Massachusetts State Police back up. Officer Ryan related that during this segment of the encounter, Mr. Campbell complied with his request for the automobile registration by retrieving it from the unlocked glove compartment.

The vehicle search was begun after back up had arrived and the occupants had been removed from the vehicle and handcuffed. On cross-examination, Officer Ryan testified that about five (5) minutes[4] elapsed during the time when he spoke to Alvin Campbell upon pulling him over and when he returned to his cruiser to check defendant's license and registration. During the time that Officer Ryan was in his cruiser calling for back up, the motor vehicle was running. Although it was not noted in Officer Ryan's report, he testified that he does not think

---

[3] State Trooper Michael Ferrari testified on cross examination that speeding is not an arrestable offense.

[4] Upon further questioning, Officer Ryan testified that it "could have been" between five (5) and ten (10) minutes.

the vehicle's taillights were still on when he approached the car with the state troopers[5]. Despite the fact that the car was running continuously during the stop – and despite the fact that he was closely observing the car to make sure it didn't take off or reverse into him while he was in the cruiser – Officer Ryan maintained that the previously unlocked glove compartment was now locked and had to be opened by him using the ignition key[6]. Officer Ryan found a loaded 9 mm and more marijuana upon unlocking and searching the glove compartment[7].

Finally, Officer Ryan testified on cross examination that as an MBTA police officer, he can issue speeding tickets on "any public way" as part of his duties. He further testified that MBTA police officers have "full police powers" in the 175 cities and towns in Massachusetts, and are "sworn to uphold all the laws in the state of Massachusetts." Officer Ryan has no special appointment as a state trooper or in any of the 175 cities and towns of Massachusetts.

## II.    OFFICER RYAN, OF THE MBTA TRANSIT POLICE, DID NOT HAVE AUTHORITY TO STOP ALVIN CAMPBELL FOR SPEEDING ON INTERSTATE 95; THEREFORE, THE MOTOR VEHICLE STOP WAS UNLAWFUL

Massachusetts Bay Transportation Authority police officers have ". . . within the territorial limits of the authority, the powers and duties conferred or imposed upon police officers

---

[5] This testimony was contradicted by State Trooper Ferrari, who testified that before Officer Ryan and Trooper McGowan approached the vehicle, the car was running.

[6] Officer Ryan testified that there was only one key found during the search of the car and of the two occupants of the vehicle.

[7] As set forth more fully in the Background Facts section of defendant's original Memorandum of Law, defendant was arrested for marijuana and firearm possession.

of cities and towns" under G.L. c. 41, § 98.  Commonwealth v. Mottola, 10 Mass. App. Ct. 775,

779 (1980).  The statute which authorizes the establishment of a police department by the MBTA

confers upon MBTA police the powers granted by both G.L. c. 41, § 98 and G.L. c. 159, § 93

(powers of railroad, street railway, and steamboat police).  The Massachusetts Appeals Court has

held that since the statute expressly confers upon the MBTA police the powers of police officers

of cities and towns as well as the powers of police officers of transportation companies, there is

no indication of legislative intent to confine the authority of the MBTA police to MBTA

premises.  See id. at 780.

In Mottola, defendant approached a ninth grade student at the State Street MBTA stop in

Boston.  See id. at 778.  Defendant followed the student onto the train, and again when she

disembarked at Maverick Station and waited for an MBTA bus.  See id.  Defendant again

followed the student when she boarded the bus, as well as when she exited the bus and walked

toward her school in East Boston.  See id.  Defendant suggested to the student that she pose for

some photographs for him; when she refused, he informed her that he would be waiting for her

when school was over for the day, and would harm her if she did not agree to pose for him.  See

id. at 779.

The student informed school officials what had transpired, and the Boston police were

called; in turn, the Boston police notified the MBTA police.  See id.  An MBTA detective

arranged to take the student to East Boston High at the end of the day; as promised, the defendant

was waiting for the student.  See id.  Two MBTA officers approached the defendant and arrested

him after a pat frisk revealed defendant was carrying an unlicensed gun.  See id.

After making the findings regarding the powers granted to the MBTA discussed above, the Massachusetts Appeals Court found that the MBTA police officers "had authority to question and arrest the defendant at the East Boston High School, *at least where, as here, the offense originated on MBTA property and related to the protection of an MBTA passenger*[8]." Id. at 781 (emphasis added). The court also noted that there was no question of conflicting jurisdiction (between the Boston Police Department and the MBTA Police) because the Boston police initiated the MBTA investigation. See id.

In the present case, the offense (speeding) did not originate on MBTA property; rather, the offense occurred on Interstate 95, a highway under the jurisdiction of the Massachusetts State Police. It is certainly uncontested that the offense did not related to "the protection of an MBTA passenger" as the offense in Mottola did. On the contrary, Officer Ryan was driving from MBTA headquarters in Roxbury on his way to work a private detail when he observed a vehicle he determined might be exceeding the posted speed limit – a civil infraction for which he could not arrest Mr. Campbell. The subsequent stop of defendant Campbell's vehicle in this situation was outside Officer Ryan's authority as an MBTA police officer; as such, the resulting search was unlawful and the items found during the search should be excluded.

---

[8] Similarly, the Appeals Court found that a Boston University police officer had the authority to arrest an individual on a public street given the fact that on the day of the arrest, the BU officer had an appointment as a special State Police officer under G.L. c. 22C, § 63, and a commission as a Suffolk County deputy sheriff. See Young v. Boston University, 64 Mass. App. Ct. 586, 588 (2005). The court held that as a special State Police officer, the university officer's authority extended to the environs surrounding the campus, particularly given the fact that the conduct complained of originated on the Boston University campus. In the present case, MBTA Officer Ryan had neither an appointment as a special State Police officer nor special appointments or commissions in any of the cities or towns of Massachusetts.

Massachusetts General Law chapter 41, section 98A grants police officers the right to arrest on "fresh and continued pursuit" in a jurisdiction that is not his or her own[9]. The ability to arrest someone outside the police officer's jurisdiction during a "fresh and continued pursuit" is an exception to the general rule that a police officer is ". . . powerless to make a warrantless arrest outside the boundaries of the governmental unit by which he was appointed." Commonwealth v. LeBlanc, 407 Mass. 70, 72 (1990) (citing Commonwealth v. Grise, 398 Mass. 247, 249 (1986)). Through G.L. c. 41, § 98A, the Legislature granted "extraterritorial fresh pursuit arrests *for any arrestable offense, whether it be a felony or misdemeanor,* initially committed in the arresting officer's presence and within his jurisdiction." Id. (emphasis added).

In LeBlanc, the Massachusetts Supreme Judicial Court affirmed the lower court's grant of defendant's motion to suppress on the grounds that in order to meet the c. 41, § 98A exception, an officer must know that an arrestable offense has been committed in his presence in order to pursue an individual into another jurisdiction. See id. In that case, a Natick police officer witnessed defendant drive through a red light at a high rate of speed. See id. at 70. The officer followed the defendant into Framingham and pulled him over for speeding and failing to stop. See id.. The court noted that both speeding and passing through a red light are civil traffic infractions, neither of which are arrestable offenses. See id. at 73, n. 3. The Supreme Judicial Court went on to note that the Legislature "knows how to expand the extraterritorial authority of the police when it sees fit to do so;" it is up to the Legislature, therefore, to expand police

---

[9] Chapter 41, § 98A states, in relevant part: "A police officer of a city or town who is empowered to make arrests within a city or town may, on fresh and continued pursuit, exercise such authority in any other city or town for any offence committed in his presence within his jurisdiction for which he would have the right to arrest within his jurisdiction without a warrant. Said officer may return any person so arrested to the jurisdiction wherein said offence was committed."

authority to allow extraterritorial stops for traffic violations if it chooses to do so. Id. at 75. The Court excluded the evidence against defendant on the grounds that the police officer lacked statutory or common law authority both when he stopped the defendant and when he arrested him[10]. See id.

While it is true that pursuant to G.L. c. 41, § 98, MBTA police officers have "the powers and duties conferred or imposed upon police officers of cities and towns," individuals who are police officers in the city of Boston, for example, are conferred certain powers and duties that apply to them only in the city of Boston. Absent a "fresh and continued pursuit," a Boston police officer cannot execute a warrantless arrest of an individual in Cambridge. Analogously, MBTA police officers have as their primary jurisdiction MBTA property such as stations and parking lots, and modes of transportation such as buses, trains, commuter boats, trolleys, and subways. An MBTA police officer – particularly one who is simply using the highway to travel to a "private detail" – cannot possibly have more authority than that granted to a police officer in a given city or town. Speeding is a civil infraction – not an arrestable offense – therefore, the "fresh and continued pursuit" exception does not apply to this case. Officer Ryan lacked the authority to stop Alvin Campbell; therefore, the resulting search and arrest were unlawful and the evidence should be excluded.

---

[10] The defendant in LeBlanc was arrested for driving while under the influence of alcohol – a condition which the Natick police officer was not aware of at the time he chose to pursue defendant into Framingham and stop him for failing to stop at a red light.

### III.    CONCLUSION

For all of the foregoing reasons, as well as for the reasons set forth in defendant's initial Memorandum of Law in Support of His Motion to Suppress Evidence, the firearm found during the search of the vehicle should be excluded from evidence at trial.

Respectfully submitted,
**ALVIN CAMPELL,**
By his attorneys,

/s Christie M. Charles
_____
George F. Gormley (BBO # 204140)
Christie M. Charles (BBO# 646995)
*George F. Gormley, P.C.*
755 East Broadway
South Boston, MA 02127
(617) 268-2999

**Dated:**       July 13, 2006

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 13, 2006.

/s Christie M. Charles
_____
Christie M. Charles