## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
        v.                        )        CRIMINAL NO. 05-10142-JLT
                                  )
ALVIN CAMPBELL                    )

## GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The government hereby respectfully submits it supplemental opposition to Defendant Alvin Campbell's Motion to Suppress Evidence (the "Motion").  More specifically, the government responds herewith to Defendant Alvin Campbell's Supplemental Memorandum of Law in Support of His Motion to Suppress Evidence (the "Memorandum").  As shown below, the sole supplemental claim the defendant has raised – that MBTA Police Officer Ryan lacked jurisdiction to stop the defendant for speeding on March 19, 2005 – is without merit.  For this reason, and for all the reasons set forth in the government's initial opposition to the Motion, the Motion should be denied.

### FACTUAL BACKGROUND

The government relies on the facts set forth in its initial opposition, as confirmed by the evidentiary hearing before this Court, for the relevant factual background.  The government makes only the two additional observations in light of contentions in the defendant's Memorandum.

First, the defendant contends that Officer Ryan was unable

1

at the hearing to explain for whom he was performing the detail
for which he was reporting when the defendant sped by him on
I-95, and elsewhere refers to it as a "private detail."
Memorandum at 1 n. 2, 7.  While it is not relevant to whether
Officer Ryan had the legal authority to stop the defendant's
vehicle, the government understood Officer Ryan to testify that
the detail was being performed for the MBTA itself rather than
for a private company such as Boston Edison.  The detail involved
patrolling MBTA parking areas in the southern part of the MBTA
territory.  The government assumes that performing this duty in
the early morning hours is not a popular activity, and that,
rather than assign officers to perform this function as part of
their regular duties, the MBTA enlists volunteers such as Officer
Ryan who perform these duties on a detail basis.

       In the context of the stop itself, the defendant also
questions Officer Ryan's testimony that, initially, the
defendant's passenger retrieved documents from the glove
compartment, but that, despite the fact that the car remained
running during the entire stop, and despite the fact that only
one ignition key was recovered, the glove box had become locked
by the time Officer Ryan attempted to open it while searching the
car incident to the defendant's arrest.

       Several points are in order.  First, the government does not
recall any evidence as to how one locks the glove box in this

vehicle – specifically, whether one has to use an ignition key. Second, the government does not recall Officer Ryan testifying that he was fixated continuously on the defendant's vehicle during the period he returned to his cruiser and was attempting to get reinforcements, and thus it is possible that, assuming one did have to use the ignition key to lock the glove box, the engine was shut down for a brief period while this was done. Third, there would have been no reason for Officer Ryan to fabricate either that the box was initially unlocked or that it was later locked: he had probable cause to arrest the defendant and Cook based on the obvious presence of marijuana in the vehicle, and, as demonstrated in the government's initial opposition, he thus had the authority to look into the glove box as an incident to the defendant's arrest regardless of whether it was locked or unlocked.  Fourth, whether the box was locked or unlocked has no bearing on the defendant's Motion in any event.

The bottom line is that, as shown below, Officer Ryan did have the legal authority to stop the defendant for speeding. Based on that, and the arguments set forth in the government's initial opposition, the defendant's Motion should be denied.

**ARGUMENT**

**A.    Officer Ryan Had the Authority to Stop the Defendant**

The defendant claims that Officer Ryan did not have authority to stop the defendant for speeding on I-95 in Sharon.

Memorandum at 3-7.  The defendant, however, is mistaken.

In October of 1968, legislation was passed (Chapter 664 of the Acts of 1968, as amended by Chapter 829 of the Acts of 1970, and Chapter 329 of the Acts of 1993), which created the MBTA Police Department.  Section 1 of Chapter 664 of the Acts of 1968 provides that MBTA police officers "shall have, within the territorial limits of the [MBTA], the powers and duties conferred or imposed upon police officer of cities and towns" under G.L. c. 41, § 98.  There are 175 cities and towns that make up the MBTA territory, including Sharon.  See G.L. c. 161A, as amended by Chapter 127, Section 151 of the Acts of 1999.  Accordingly, MBTA officers, such as Officer Ryan, have full police powers in each of the 175 cities and towns that make up the MBTA territory, and thus Officer Ryan had the lawful authority to stop the defendant for speeding in Sharon.

The defendant acknowledges the broad powers of MBTA officers within the MBTA territorial limits, but contends, based on Commonwealth v. Mottola, 10 Mass.App.Ct. 775 (1980), that this authority exists only when an offense originates on MBTA property.  Memorandum at 3-5.  In Mottola, the defendant approached a ninth grade student in an MBTA stop and continued to follow her to school as she traveled both on the subway and on a bus.  Id. At 778.  During the bus ride the defendant asked if the student would like to pose for photographs, and she refused.  Id.

4

When she got off the bus, the defendant followed her to the
school entrance, repeating his suggestion that the student pose
for pictures.  <u>Id</u>. at 778-79.  When they reached the entrance,
the defendant said he was going to wait for the student after
school and would hurt her if she did not cooperate.  <u>Id</u>. At 779.
The student told the principal; the Boston police were notified;
and they notified the MBTA police.  <u>Id</u>.  An MBTA detective drove
that afternoon with the victim in front of the school, and she
identified the defendant.  <u>Id</u>.  Two members of the MBTA police
then approached the defendant and patted him down when he
appeared startled.  <u>Id</u>.  The officers recovered an unlicensed
hand gun, and the defendant was charged accordingly.  <u>Id</u>.

In <u>Mattola</u>, as here, the defendant argued that the MBTA
officer had no authority to arrest him on premises not owned or
controlled by the MBTA.  <u>Mattola</u>, 10 Mass.App.Ct. at 779.  The
Court of Appeals disagreed, however, concluding that "the MBTA
police officers had authority to question and arrest the
defendant at the [school], at least where, as here, the offense
originated on MBTA property and related to the protection of MBTA
passengers."  <u>Id</u>. at 781.

The defendant seizes on the end of the foregoing sentence
and argues that, here, the offense did not originate on MBTA
property.  But the <u>Mottola</u> decision does not hold that it is a
prerequisite to an MBTA officer's authority that an offense start

5

on MBTA property.   More to the point, the statute conferring
powers on MBTA officers carries no such restriction, and instead
confers full police powers on MBTA officers anywhere within the
175 cities and towns making up the MBTA territory.

The decision of the Supreme Judicial Court ("SJC") in
Commonwealth v. Maher, 408 Mass. 34 (1990), is instructive in
this regard.   Maher concerned the authority of the former MDC
police.   An MDC officer was in his car in the driveway of his
Woburn home at 11:00 at night, preparing to go to work, when the
defendant's car passed him at a high rate of speed and without
its headlights being illuminated.   Id. at 35.   The officer
pursued the vehicle and, after observing it proceed through an
intersection without stopping for a stop sign, pulled it over.
Id.   The officer identified himself, recognized that the
defendant appeared to be drunk, and requested the assistance of
Woburn police officers.   Id.   A district court judge dismissed
the case on the ground that the MDC officer acted outside his
territorial jurisdiction when he stopped and arrested the
defendant.   Id.

The SJC reversed. The SJC noted that the relevant law
provided that MDC police had, "within the cities and towns . . .
wherein property owned by or under management or control of the
[MWRA] is situated . . . all the powers of police officers and
constables of towns of the commonwealth."   Maher, 408 Mass. at

6

36.  The SJC concluded that, "[b]ecause the MWRA owns and operates underground waterpipes in Woburn, Woburn is a city under the statute in which MDC police officers have jurisdiction."  Id. at 38.

In so holding, the SJC rejected an argument that the MDC police did not have the unlimited authority to pursue and arrest someone who was not interfering with the operation of the waterworks or sewage systems.  Maher, 408 Mass. at 37-38.  The SJC observed that the relevant statute was not so limited, and instead granted the MDC officers in towns where the MWRA controlled or managed property "all the powers of police officers and constables of towns of this commonwealth," without limiting that authority to the locus of the MWRA property.  Id. at 38. Similarly, here the law governing the authority of MBTA officers in the 175 cities and towns making up the MBTA territory does not limit the officers' authority to property owned or controlled by the MBTA but instead provides that the officers have full police powers throughout the cities and towns of the territory.

Because Officer Ryan was in Sharon - which is within the territory of the MBTA - when he stopped the defendant's car, he had the requisite authority.  The defendant's citation to cases involving "fresh pursuit" thus have no relevance to this case. The defendant notes that absent a "fresh and continued pursuit," a Boston police officer cannot execute a warrantless arrest in

Cambridge.  Memorandum at 7.  The defendant claims, that, "[a]nalogously, MBTA police officers have as their primary jurisdiction MBTA property such as stations and parking lots, and modes of transportation such as buses, trains, commuter boats, trolleys, and subways.  An MBTA police officer – particularly one who is simply using the highway to travel to a 'private detail' – cannot possibly have more authority than that granted to a police officer in a given city or town."  Memorandum at 7.  But there are several flaws in this argument.

First, the situation of the MBTA police is not analogous to a Boston police officer making an arrest in Cambridge.  As noted above, MBTA police have full police powers in 175 cities and towns, including Sharon.  The defendant's argument might have some force had Officer Ryan stopped the defendant in a city or town outside the MBTA territory, but that is not what happened.

Second, the defendant's claim that MBTA police officers "have as their primary jurisdiction MBTA property" has no basis in the relevant statute.  Just as the MDC officer in Maher had full police powers in Woburn and was not restricted to the locus of MWRA property, MBTA officers have full authority throughout the 175 cities and towns in the MBTA territory.

Third, the fact that Officer Ryan was on his way to a detail is immaterial.  As noted above, the detail was actually for the MBTA itself; indeed, Officer Ryan testified at the evidentiary

8

hearing that he had first reported to the MBTA headquarters in Boston and was on duty and on his way to patrolling the parking lots when the defendant sped past him. Moreover, the defendant has cited no authority for the proposition that a police officer working a paid detail for a private company, or even a police officer who is off-duty, lacks authority to exercise his police powers. To the contrary, <u>Maher</u> suggests precisely the opposite, inasmuch as the MDC officer in that case was in his driveway at home and preparing to go to work when the defendant sped by him with no headlights.

In sum, Officer Ryan had full police powers in Sharon and therefore his arrest of the defendant was lawful.

**B.    <u>The Defendant Has Not Shown a Constitutional Violation</u>**

Moreover, the defendant has not shown that, even assuming Officer Ryan did not have the authority to stop the defendant, this would amount to a constitutional violation. In <u>United States v. Mikulski</u>, 317 F.3d 1228, 1232 (10th cir. 2003), the Tenth Circuit noted that an officer's violation of state law is not, without more, necessarily a federal constitutional violation, although it may factor into a determination of whether the officer acted reasonably under the Fourth Amendment. In <u>Mikulski</u>, the Tenth Circuit ultimately concluded that actions by Utah County officers in Salt Lake County that led to an arrest in violation of the state's fresh pursuit law did not amount to a

federal violation.  <u>Mikulski</u>, 317 F.3d at 1233.  Likewise, here

the defendant has not shown that a stop by a police officer

outside his jurisdiction should be deemed a federal, Fourth

Amendment violation entitling him to suppression.  <u>See</u> <u>also</u>,

<u>e.g.</u>, <u>United States v. Green</u>, 178 F.3d 1099, 1106 (10th Cir.

1999); <u>but</u> <u>cf.</u> <u>United States v. Simon</u>, 368 F.Supp.2d 73 (D.D.C.

2005).

<u>**CONCLUSION**</u>

For the foregoing reasons, as well as the reasons set forth

in the government's initial opposition, the Motion should be

denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

/s/Robrt E. Richardson
ROBERT E. RICHARDSON
Assistant U.S. Attorney

<u>**CERTIFICATE OF SERVICE**</u>

I, Robert E. Richardson, hereby certify that this document
filed through the ECF system will be sent electronically to the
registered participants as identified on the Notice of Electronic
Filing (NEF) and paper copies will be sent to those indicated as
non-registered participants on July 21, 2006.

/s/Robert E. Richardson
Robert E. Richardson
Assistant U.S. Attorney

11